FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2001 AUG 13  P 4: 01

CLERK'S OFFICE
AT BALTIMORE

DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

OTTENHEIMER PUBLISHERS, INC. :
                              ::
v.                            :     CIVIL NO. CCB-00-3081
                              :
PLAYMORE, INC., et al.        :
                              :
                              :

...oOo...

## MEMORANDUM

Now pending before this Court is a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure filed by Defendant Peter Haddock Ltd. ("Haddock"). In its complaint, Plaintiff Ottenheimer Publishers, Inc. ("Ottenheimer") alleges that Haddock and Defendant Playmore, Inc.,("Playmore"),[1] violated the Copyright Act of 1976, as amended, 17 U.S.C. § 101 et seq., and engaged in a number of acts of unfair competition. As the matter has been fully briefed by the parties, no hearing is necessary. See Local Rule 105.6. For the reasons stated below, Haddock's motion to dismiss will be **granted.**

## STANDARD OF REVIEW

When, as in this instance, a defendant challenges a court's personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the burden rests ultimately with the plaintiff to prove, by a preponderance of the evidence, grounds for

---

[1] Playmore is not challenging jurisdiction in this case.

jurisdiction. See <u>Mylan Laboratories, Inc. v. Akzo</u>, 2 F.3d 56, 59-60 (4th Cir. 1993). If the issue is decided without an evidentiary hearing, the plaintiff needs only to make a prima facie showing of personal jurisdiction. See <u>id</u>. at 60; <u>Owens-Illinois, Inc. v. Rapid Am. Corp. (In re Celotex Corp.</u>), 124 F.3d 619, 627 (4th Cir. 1997). In making its determination, the court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor. See <u>Mylan</u>, 2 F.3d at 60.

## **BACKGROUND**

Ottenheimer is a corporation incorporated under the laws of the state of Maryland, with its principal place of business in Baltimore County, Maryland. Ottenheimer is engaged in the publication of books. (Comp. at ¶¶1,4.)

Haddock is a corporation incorporated under the laws of the United Kingdom, with its headquarters and principal place of business located in Bridlington, East Yorkshire, England. (Def. Mot. to Dis., Decl. of P. Haddock at ¶2.) Haddock does not have any offices located in Maryland or elsewhere in the United States; nor does it have a telephone listing, agents, employees, or sales representatives located in Maryland. (<u>Id</u>. at ¶¶2-3.) According to its Chairman, Peter Haddock, Haddock has never advertised directly to consumers in Maryland and derives no revenue from sales to Maryland consumers.(<u>Id</u>. at ¶¶3, 5.) No one

from Haddock has ever visited Maryland. (Id. at ¶3.)

Haddock does maintain an Internet website, located at www.peterhaddock.com, which can be accessed from anywhere in the world, including Maryland. The website displays contact information for the company, including its telephone number and address, along with advertisements and retail prices for the books. The website provides at least two ways to order the advertised materials. Visitors can either send an e-mail to Haddock requesting an electronic order form, or e-mail a fax number to Haddock so that the order form can be faxed to the potential customer. (Id. at ¶4.) According to Mr. Haddock, Haddock has never received any orders through the website from consumers in Maryland. (Id.)

On several occasions over the last decade, Haddock has purchased books from Ottenheimer for resale; Haddock also has entered into two license agreements with Ottenheimer. In July 1981, the parties negotiated a License Agreement under which Ottenheimer licensed to Haddock the right to publish a book entitled "The Seasons of Fern Hollow" for a period of three years from the date of initial publication. (Pl. Res. Mot. to Dis., Ex. A, License Agreement, 7/2/81.) As an aspect of the License Agreement, the parties agreed that "[r]egardless of the place of its physical execution, the agreement shall be interpreted under the laws of the State of Maryland and of the United States of

America." (Id.) The agreement was negotiated between Allan T. Hirsh, III, the President of Ottenheimer, and Mr. Haddock. (Pl. Res. Mot. to Dis., Aff. of A. Hirsh at ¶5.)

In 1992, as a result of negotiations initiated at a trade show in Bologna, Italy, Haddock purchased from Ottenheimer 10,000 copies of four pop-up books based on holiday themes for a total purchase order of 40,000 books. In 1993, as a result of negotiations initiated at trade shows in England, Haddock purchased 20,000 copies of two more pop-up books based on holiday themes for a total purchase of 40,000 books. In each instance, the books were printed in Colombia, South America, shipped to Haddock in the United Kingdom, and sold only in the United Kingdom and other commonwealth nations. (Def. Mot. to Dis., Decl. of P. Haddock at ¶8.) The purchase orders and checks, however, for each order were sent by Haddock to the offices of Ottenheimer in Maryland. (Id.) No License Agreement was involved.

The parties signed a second License Agreement in May 1998, under which Ottenheimer licensed to Haddock the rights to publish a set of four books known as the "Teaching Train Board Books" for a term of two years, ending in May 2000. (Pl. Res. Mot. to Dis., Ex. B, License Agreement, 5/11/98.) The parties agreed that the agreement "shall be construed as to both validity and performance and enforced in accordance with and governed by the laws of the State of Maryland, without giving effect to the principles of

conflict of laws thereof. The forum for any disputes shall be the State of Maryland." (Id.) This agreement also was negotiated by Mr. Hirsh and Mr. Haddock. (Pl. Res. Mot. to Dis., Aff. of A. Hirsh at ¶6.)

Also in 1998, Haddock entered into a license agreement with Playmore, Inc., a company incorporated under the laws of the state of New York. (Comp. at ¶5.) In this agreement, Haddock licensed to Playmore a set of pop-up books based on holiday themes. The agreement was negotiated and executed in New York. (Def. Mot. to Dis., Decl. of P. Haddock at ¶9.) On October 13, 2000, Ottenheimer filed a complaint, alleging that the holiday theme books licensed by Playmore from Haddock infringed on three of Ottenheimer's registered copyrights. (Comp. at ¶7.) The copyrights allegedly infringed relate to the books purchased by Haddock in 1992 and 1993, not the books that were the subject of either License Agreement.

## ANALYSIS

Under Federal Rule of Civil Procedure 4(k)(1)(A), a federal court may exercise personal jurisdiction over a defendant who "could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located." The court must first determine whether the state's long-arm statute authorizes the exercise of jurisdiction over the defendant in the circumstances presented. See ESAB Group, Inc. v.

Centricut, Inc., 126 F.3d 617, 622 (4th Cir. 1997.) If the state statute does authorize long-arm jurisdiction, then the court must determine whether the exercise of jurisdiction comports with the due process requirement of the Fourteenth Amendment. See id.

Because the Maryland statute extends in personam jurisdiction to the limits permitted by the Due Process Clause, however, "the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one." Stover v. O'Connell Assocs., Inc., 84 F.3d 132, 135-36 (4th Cir. 1996)(citations omitted). It is nonetheless necessary first to identify a specific Maryland statutory provision authorizing jurisdiction. Then "to the extent that a defendant's activities are covered by the statutory language, the reach of the statute extends to the outermost boundaries of the due process clause." Joseph M. Coleman & Assoc., Ltd. v. Colonial Metals, 887 F. Supp. 116, 119, n.2 (D. Md. 1995). Indeed the Maryland long arm statute provides that: "If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section." Md. Code Ann., Cts. & Jud. Proc. § 6-103(a).²

---

²Ottenheimer does not contend that Haddock's contacts with Maryland are sufficiently systematic and continuous to support the exercise of general jurisdiction over this matter. See Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 415, 104 S.Ct. 1868, 1872 (1984).

-6-

Ottenheimer does not identify any particular provision of the long-arm statute on which it relies and appears to acknowledge it does not meet the ordinary test that might be applied in a contracts action. Pl. Res. Mot. to Dis at 4; see Municipal Mort. & Equity, LLC. v Southfork Apartments, L.P., 93 F. Supp. 2d 622, 629 (D. Md. 2000)(holding that a party had not demonstrated that it had purposefully established minimum contacts with Maryland when the party did not initiate the business relationship, the negotiations and performance of the contract took place outside Maryland, and the law of another state governed interpretation of the contract). Rather it argues that because copyright infringement constitutes an "intentional" tort, it can rely on the "effects" test set forth in Calder v. Jones, 465 U.S. 783, 789, 104 S.Ct. 1482, 1486-7 (1984), and that the "effects" of the alleged copyright infringement are necessarily felt at its principal place of business in Maryland. (Pl. Resp. Mot. to Dis. at 6.) This argument, however, stretches Calder beyond the limits of the Constitution.

Calder has been commonly interpreted to require that the plaintiff demonstrate the defendant's conduct was intentional and tortious, the forum was the focal point of the harm suffered by the plaintiff, and the defendant "expressly aimed" its tortious conduct toward the forum such that the forum could be said to be the focal point of the tortious activity. See id. at 789-90,

1487; Costar Group, Inc. v. Loopnet Inc., 106 F. Supp. 2d 780, 785 (D. Md. 2000)(quoting IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 265 (3rd Cir. 1998); ESAB, 126 F.3d at 625. Even assuming that Haddock's alleged conduct was intentional and tortious, it is clear that Ottenheimer has failed to demonstrate that Haddock's behavior satisfies the other two jurisdictional requirements outlined in Calder.

Ottenheimer primarily contends that the court should exercise jurisdiction under Calder because the effects of Haddock's actions would be felt in Maryland, the location of Ottenheimer's headquarters. The mere presence of business headquarters in a state, however, will not support jurisdiction unless it is ultimately "accompanied by the defendant's own contacts with the state." ESAB, 126 F.3d at 626; see also Ritz Camera Centers, Inc. v. Wentling Camera Shops, Inc., 982 F. Supp. 350, 354 (D. Md. 1997). And in this case, it cannot be said that Haddock's activities were expressly aimed at Maryland in such a manner as to invoke jurisdiction under Calder.

Ottenheimer argues that three categories of evidence demonstrate that Haddock was expressly aiming its actions towards Maryland: (1) the selection of Maryland as governing law in two license agreements; (2) the receipt of the payments for the copyrighted material in Maryland; and (3) the presence of a website that consumers could access in Maryland.

These factors are insufficient to create personal jurisdiction over Haddock. The business relationship between the parties, as well as a majority of the sales activities, took place outside Maryland. Haddock's representatives had never visited Maryland, nor had Haddock established a physical presence in Maryland. Most importantly, all negotiations regarding the copyrighted material at issue-the holiday theme books purchased in 1992 and 1993-took place overseas, and moreover, the eventual sale of these books took place outside of the United States, in the United Kingdom and throughout the British Commonwealth.[3] (See Def. Mot. to Dis., Decl. of P. Haddock at ¶8.) Further, the website "permits no more than basic inquiries from Maryland customers,...has never yielded an actual inquiry from a Maryland customer, and... does not target Maryland in any way." American Information Corp. v. American Infometrics, 139 F.Supp. 2d 696, 700 (D. Md. 2001).

The circumstances of this case closely resemble those in ESAB. In ESAB, the Fourth Circuit found that a company had not expressly aimed its activities towards South Carolina, although the harm resulting from the allegedly tortious activity would be felt at the competitor's headquarters in South Carolina. ESAB,

---

[3] While the licensing agreement with Playmore was negotiated and executed in the United States, that was accomplished in New York rather than Maryland. (Def. Mot. to Dis., Decl. of P. Haddock at ¶9.)

126 F.3d at 625-26; see also Stover, 84 F.3d at 137 (occasional telephone requests to a investigative service based in Maryland did not satisfy the Calder test).

In short, while Haddock may have maintained tenuous contacts with the state of Maryland, in the course of conducting its business within in a variety of international markets, it cannot be said Haddock intentionally aimed its allegedly tortious conduct at Maryland such that Maryland was the focal point of Haddock's activity and the focal part of any harm suffered by Ottenheimer. Accordingly, personal jurisdiction in this forum is not warranted.

Before dismissing Haddock from the case, however, the parties will be allowed sufficient time to submit briefs on an additional issue, if they choose. Haddock acknowledges that jurisdiction may be appropriate in New York. See Def. Mot. to Dis. at 3, n.1. If Ottenheimer wishes to address the possibility of transfer, it may do so by the date stated in the Order which follows.

8/13/01
Date

Catherine C. Blake
United States District Judge